The final case in which we'll hear oral argument this morning is number 05-1614 Momentus Golf v. Swingrite Corporation. Mr. Marcucci? Good morning. Did I pronounce it correctly? You did. Okay, good. You have five minutes for rebuttal, correct? Yes. Okay, you can start whenever you're ready. Thank you very much. I'll just say with the nice weather we've been having here in Washington, it's a shame we can't be outside and exercise the skills that your client's invention would convey to us. I would quite agree with that. Okay, I'll let you go ahead and begin with your argument when you're ready. May it please the Court, Mr. Acting Chief Judge, other judges of this honorable court, Mr. President, my name is Larry Marcucci and I represent the plaintiff appellant, Momentus, Inc., which is the assignee of what we call the 407 patent. This case comes to you this morning after the Honorable James Gritzner sitting in the Southern District of Iowa granted summary judgment for the defendant, which followed his claim construction in a so-called Markman ruling. I want to get to the heart of it. I'm not going to talk a lot about it. I'm happy to talk about the club itself, but you can see from the record what the club is. No, I think you're well advised, as you suggested you would do, Mr. Marcucci, to get right to the heart of it, and it really is this question of whether during prosecution there was surrender. No question, Your Honor, that is the heart of it. That is absolutely the heart of it. It's a very clean case. It is a clean case in that regard. It's not all that complicated, and it's not all that complicated of a device, and I think the term substantially centered about the midpoint is entitled to its ordinary and customary meaning unless there was a clear and unmistakable surrender in the prosecution process. Yes, Your Honor. What about the use of the word homogenous in the specification to describe the club? I know that's a limitation only of dependent claim three, but there does seem to be a suggestion in the specification that this is an important feature of the invention, and I would think that something where there was extra weight as a result of attaching the club at one end wouldn't satisfy a homogenous limitation. No, I quite disagree. I think the homogenous limitation goes to the club shaft itself and is one of the problems with the reference to this wallow device, which is hollow and which you could fill with something, maybe fully, maybe not. The important thing in our club is that the texture is homogenous throughout the weight of the shaft, and then at the end, we attach a normal club. So I don't think it's distinct at all. In fact, the club head itself is not hollow. It's a homogenous device itself. But you're right to the extent that if you want to try to make an indistinction argument, you could say that hanging a club head on the end is inconsistent with that language in three. But it's really quite not, I believe, because that's a description of the shaft itself. And Judge Kuchner goes to some length to explain why all the limitations in Claims 1 through 7 also apply to 9, which is where the club head goes on. And I'm not sure how meaningful that is or not. But regardless, the shaft itself is the device and has to have some properties that are distinct unto itself because it's not the club head. It's not the tip. It's not the grip. It's the shaft. And the shaft has to be homogenous. And that's why wallow is an indistinct reference that should not have been used. The judge in the district court decided to hang his hat, really, on the original examiner's decision that rejected one as obvious over wallow. And- But when your client distinguished wallow at page 258 of the appendix, he says, unlike wallow, applicant's trainer has a solid shaft, uses no club head. I mean, that second statement's not correct, right? Because one of the embodiments does use a club head. That's true. That's true. So that was a mistake, right? It was a mistake, but it was an effort to, an honest effort to overcome the objection. And the honest effort to overcome the objection came by describing the wallow device as a hollow device with 10 to 25% in the club head, which cannot meet the requirement that the center of gravity be substantially in the center of round stock. And that's round homogenous stock, which you've already picked up on. So, I mean, that's the importance of the device. But after he did that, Mr. Catalano, the patent lawyer, went even to a more important place. And this is where I think the case centers. The purpose of the device, the purpose of the device is different than the purpose of the wallow device. The wallow device is a golf- To strengthen your muscles. Strengthen your muscles, exactly. Your client's invention is to, as I understand it, train the muscles. Right. It's about muscle memory. You break down bad muscle memory and train good muscle memory by using this device, which was applied in this way. Mr. Marcucci, how do you get around the statement, I mean, it's a very strong statement, a hollow device having 10 to 25% club head weight cannot meet the requirements of the applicant's claims. I think that's absolutely true. You know, we don't have the wallow device here. Actually, we made one, and it's in evidence in Des Moines. I tried to get it here, but they wouldn't send it without you folks asking for it. I'm not sure why that was. But if you look at it, the center of gravity is not substantially in the center because it's hollow. In other words, the shaft doesn't have enough weight. If the shaft is solid, it has more weight, and you can have a club at the end, which falls within the 10 to 25%. Right, which is why wallow has this wishy-washy thing about you can fill it, you know. You can fill it. And the judge makes, in fact, an oral argument, and also on the record, you know, you can put something in there. Well, what could you put in there? Well, wallow says you can put anything in there. Without reference to the purpose of the device, Your Honor, wallow could be a pipe bomb. It could be a bird feeder. It could be an oil drum. Because really, the dimensions are wishy-washy. What you do with it is wishy-washy. It's just not our device. Mr. Catalano, at the end of his remarks to the examiner, which prevailed, says wallow does not disclose the same structure. And whether you like the pipe that we made or not, you know, it's a different structure for sure. And wallow teaches an entirely, entirely different concept of golf. They're simply not the same device, and they're not for the same purpose. Well, but, I mean, that's not entirely true, is it? Because if you look at wallow, it, on column one of wallow, lines 34 and 35, it does say strengthen muscles while simultaneously and automatically guiding body movements into proper coordination. So to that extent, it is the same purpose. Yeah, you could read it that way, and I was anticipating that you might say that, Your Honor. And you could say that it does try to guide the muscles, and so, but that wasn't its purpose. Its purpose was to strengthen. And never in wallow, if you read the entire prosecution history of wallow, do they discuss muscle memory. It just was not a concept that they were, that was included in their design, their idea, and in their design of the product. It was not, excuse me, something that they were trying to do. And I want to get to this, too, while I have the time. The disclaimer, if there's a disclaimer, has to be clear and unmistakable. The Sandvik's case that you all came down with last July has a lot of wisdom in it about what that means. And what it means is, if there are more than one interpretations, or if there are several potential interpretations, then there is no unmistakable and clear disclaimer. The prosecutors, if the prosecution argument is subject to more than one interpretation, that are consistent with the Crawford meeting, which would be Mr. Catalano's meeting, I suppose, then there's no clear disclaimer. Because, and the reason for that is clear in Sandvik's, because it doesn't contribute to the notice, which is part of the reason for the plain description in the first place. What does it really notify you of? If you read Mr. Catalano's statement as a whole, as a hollow device with 10 to 25%, which is intended to strengthen the muscles so that you get a quicker swing, which was what I think Mr. Wall was after when he went for the patent, that's a different animal than what we have. You know, one way to understand this, and this is a reference to when Mr. Schneider, the defendant's owner, he decided to file for a patent. And his patent application was rejected. And he tried to argue his way out of the rejection by focusing on a different sort of a midpoint. And he said the exact location of the center of gravity is not critical, as long as the golf training of Sorenson provides the same function as the claimed invention with respect to muscle memory. Now, Mr. Marcucci, you're into your rebuttal time. Do you want to save the rest of it? I think I do, yeah. All right, well, we'll give you, you've only gone about 20 seconds over, so we'll give you a full five minutes. Thank you. Mr. Bresnahan. May it please the Court, I'm Daniel Bresnahan. I'm here on behalf of the Appellee Swing Right. Your Honors, we believe that the — Doesn't Mr. Marcucci have a point about this prosecution history that's talking about a hollow device with 10 to 25 percent at one end, can't meet the requirement about the center of gravity? But that's not true. He's not necessarily saying that a solid shaft with a club head having that percentage couldn't meet it. I believe, Your Honor, the trial court was correct in asserting that the definition of the hollow shaft also did incorporate that you could make it a solid shaft, that you could put things in it, as they suggested, right in the patent itself. So I don't think it's significant whatsoever. Well, he may have been not addressing the entire problem that he had with the prior art, but to the extent that he was addressing the hollow shaft and saying a hollow shaft doesn't have enough weight to balance the club head, that that's not necessarily a surrender, is it? I think it is, Your Honor, just because of the fact that when it talks about a hollow shaft, regardless of the club head, in that instance, as a definition on that, I believe it didn't comprise the club head, but that was on number nine, I believe, of the application. So I believe that without the golf, without the head, I believe that the wallow certainly is the one that is the hollow one, and it could be filled, so I don't believe that that's significant. If wallow didn't have this language in it about could be filled, would the district court's claim construction be wrong? No, Your Honor. All right, explain that to me. If you take out the ability to fill under wallow, and wallow is just a hollow shaft with a club end, why is the district court right in finding that to be a clear, unmistakable disclaimer? Because the golf club that we produce, Your Honor, has more than 10% in the club head itself. No, but we're talking about the disclaimer. If the disclaimer's just talking about a hollow shaft, forget about wallow allowing it to be filled. If the disclaimer's just talking about a hollow shaft, they maybe disclaimed a hollow shaft with 10% to 25%, but they didn't disclaim a solid shaft with 10% to 25%. I believe that it would make no difference. Again, I just think that the club head itself is the one that makes the difference in the definition, that our club head is more than 10% of the club. Well, that's stipulated. That's agreed, but I'm not understanding why, if he distinguishes a hollow shaft, he's necessarily stuck with having included a solid shaft. Well, I guess I just don't agree with it, Your Honor. I believe that the hollow shaft differentiation is not significant. Okay. And therefore, we believe that the trial court was correct. We think that the concessions made in the prosecution supports the decision of the court. And I don't have a lot more to add to this, if there are any questions. No. Thank you, Mr. Bresnahan. Thanks. Mr. Marcucci, as I said, even though Mr. Bresnahan only used five minutes of his time, about, maybe a little more, we'll give you your full five minutes rebuttal if you need it. Don't know that I'll need that, Your Honor. I want to go to this point about the filling, though, because I think it's important. There's a lot of problems with this wallow device. And the biggest problem with it is it's ill-defined. It could be just about anything. Without reference to its purpose, it could be a pipe bomb. It could be a bird feeder. It could be an oil barrel because you can change the dimensions. You can change the length.  But think about this for a minute. When the judge casts off and excludes, Judge Grisham casts off and excludes the reference to it being hollow because you could fill it, what does that mean? Well, if you look at the language in wallow, you could fill it to get to the desired weight. Well, maybe you really wouldn't fill it. Where's that reference in wallow? You know, I don't know that I'm going to be able to put my hands on it. Okay. But the judge cites it in his opinion. I know that in the remarkable ruling itself. He cites it. In any case, let's say that that's the reason that Mr. Wallow wanted to be able to fill it. Wouldn't you fill it till you get to the desired weight? Because the purpose of it is to strengthen the muscles. Not to train the muscles. Not for muscle memory. The purpose is to get to the desired weight. And that's what he was going for. And that's why it's a different device. It's different in structure and it's different in purpose. I'm going to look with you. Okay. I know it's in his decision in the summary judgment as well, which is also in the record here. Because Judge Gritzner and I went round and round on this in oral argument about whether it was significant that it was hollow or not. And I was arguing that it was. And he pointed out that in Wallow you could fill it or not. Or you could also put a pipe thing on the end of it or not. Or you could make it 40 inches or not. You could do whatever you wanted with Wallow. But why? Why can it not be a pipe bomb? Why can it not be a bird feeder? Because of its purpose. Its purpose is to be a golf training device which is used to strengthen muscle and improve the swing and make the swing speed, which is different than this device. This device being the invention. Yes, this device being the 407 invention. I'm sorry. The purpose of this device is to, and it came from years of experience of Mr. Sorenson, is to find a way to get a device which would train the muscle memory. Break down the bad muscle memory and build good muscle memory. That's what he was going for. That's what he got. When Wallow came up in the prosecution, I think if you read Mr. Catalano's explanation of that in its entirety, and I think it has to, you can't just take out, I mean, that's what Judge Grichner did, which is improper in my opinion. He just pulled out this reference to 10 to 25% and said, you're out of business, basically. And that just is, and if you read Sandick's, that's not the way to go. You can't just carve up a statement made in an examination process and say, that's it. You know, that's a limitation. It has to be clear and unmistakable. If he said, look, we'll never have a club head that's 10 to 25% on the end of our device, Mr. Examiner, then okay. Then we've surrendered it, and it's gone. But we never said that. We said, a hollow device with 10 to 25% that's for muscle building is not our device, Mr. Examiner. And the examiner said, yes. And that's when 1 to 7 came to be, and then we said, here's claim 9, it's a club head. We're going to hang it on the end. And Mr. Examiner said, yes. He didn't say, oh, wait a minute. That interferes with WALL-E because we had explained the way WALL-E. And in my opinion, it's gone and properly gone. So I think the judge got off base, and I'm asking this court to reverse his claim construction and send it back for a trial on the merits without reference to the, I believe, improper claim construction of the Honorable Jim Gritzner. Thank you very much. Thank you very much, Mr. Marcucci. The case is submitted, and that concludes this morning.